# Staunton

ARDELLA F. OTEY v. W. H. OAKEY.

September 17, 1931.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Caldwell, Chaney & Loyd* and *B. E. Estes,* for the plaintiff in error.

*Horace M. Fox,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

There were two trials of this case in the court below. In the first trial the jury returned a verdict in favor of the plaintiff for $1,219.14. The court, on motion of the defendant, set this verdict aside. On the second trial the court limited recovery to nominal damages. It is from this judgment that the plaintiff obtained a writ of error.

The first error assigned is to the action of the court in setting aside the first verdict.

The plaintiff in her notice of motion alleges that in consideration of the sum of $2,500.00 cash in hand paid, the defendant, on July 15, 1926, conveyed to here an undivided one-half interest in seven acres of land situated in Roanoke county, Virginia; that the deed contained the covenant of the right to convey the said undivided one-half interest in fee simple and the covenants of general warranty. She alleges the breach of these covenants in the following language:

"That at the time of making and delivering said deed other parties were seised of a one-half interest in the undivided one-half interest you were purporting to convey to me by a title older and better than your title and by reason thereof I was disturbed in and evicted from the possession and enjoyment of said land described in said deed, * * * to my damage of $2,500.00, less $400.00 and $410.16, or a net sum of $1,689.84, with interest thereon from July 15, 1926, and I therefore ask for judgment for said principal net sum of $1,689.84 and interest, and my costs in this behalf expended."

To this notice the defendant filed four pleas; (1) plea of covenants performed and covenants not broken; (2) plea of *non damnificatus;* (3) plea of set-off and recoupment; and (4) a special plea.

While the consideration set out in the deed to the plaintiff is $2,500.00, the evidence shows that the real consideration was the exchange of certain real estate; *i.e.,* the defendant conveyed to the plaintiff an undivided one-half interest in seven acres of land in Roanoke county, in consideration of which the plaintiff conveyed to the defendant an undivided one-half interest in a certain house and lot in Roanoke city.

The plaintiff, in February, 1927, applied to R. S. Kime for a loan of $400.00 the payment of which was to be secured by a deed of trust on her interest in the seven acres. Mr. Kime, an attorney, examined the records and reported both to the grantor and the grantee that there was a defect in the title and that in his opinion the defendant had title to only an undivided one-fourth interest in the seven acres. Mr. Kime refused to lend the $400.00 on the security of the deed of trust alone, but required in addition the indorsement of W. H. Oakey, the defendant. Oakey agreed to this and the loan was consummated.

After the defendant had indorsed the above-mentioned $400.00 note for the plaintiff, he ascertained that there was a judgment which constituted a lien on the Roanoke property conveyed to him, to discharge which he had to pay the sum of $335.72. When the $400.00 note became due in February, 1928, the plaintiff obtained Mr. Kime's consent to a renewal for another year, but Oakey refused to indorse a renewal note unless the plaintiff would reimburse him for the amount paid to discharge the above-mentioned judgment. This she failed to do.

Mr. Kime then brought an action against the plaintiff and the defendant on the $400.00 note. Before judgment, W. H. Oakey paid the debt which, including interest and

costs, amounted to $467.55, and took an assignment of the note.

In the meantime, the plaintiff had obtained a loan of $410.16 from O. D. Kessler, the payment of which was secured by a second deed of trust on her interest in the seven acres. On the plaintiff's failure to pay this note at maturity the holder caused the property to be sold under the second deed of trust, at which sale O. D. Kessler became the purchaser. It was subsequent to this sale that the plaintiff instituted this action to recover damages of the defendant.

The plaintiff admitted that the defendant was entitled to a set-off of $1,213.43 (with interest added, $1,280.86), which principal sum is the total of the $467.55 which he had paid Kime, the $335.72 which he had paid to discharge the judgment lien on the Roanoke city property, and $410.16 which she had borrowed from Kessler, and claimed that her damage was the difference between the total of these sums and the consideration named in the deed to her. The court, on the first trial, instructed the jury that this contention was the correct measure of damages, which instruction is as follows:

"The court instructs the jury that if they believe from a preponderance of the evidence that the defendant, W. H. Oakey, executed and delivered to the plaintiff, Ardella F. Otey, the deed dated July 15, 1926, and that at the time of said delivery the said defendant did not own the entire one-half interest in said seven acres, then there was at the time of the delivery of said deed a breach of the covenant of right to convey therein contained, and if they further believe from a preponderance of the evidence that as a result of such breach of covenant the plaintiff was damaged, they shall find for the plaintiff and fix her damages at such sum as they believe from the evidence she has sustained, not exceeding the sum of $1,219.14, with interest from July 15, 1926."

This instruction told the jury that the plaintiff was entitled to recover the consideration named in her deed, less the amount she had been able to borrow on her interest in the seven acres, plus the amount paid by the defendant to discharge the judgment lien on the Roanoke city property, while the correct measure of damages is the difference between the consideration actually paid and the relative value of the one-half interest in the seven acres, with its defective title.

The plaintiff insists that because she bought an undivided one-half interest and only obtained good title to a one-fourth undivided interest, there has been a total failure of consideration, and that she is entitled to recover the entire consideration named in her deed without restoring to the defendant the property received. The only authority she cites to sustain this contention is one sentence from 7 R. C. L. 1157, which reads as follows:

"Where a deed with covenant of seisin purports to convey the entire estate, and the title fails as to an undivided interest therein, the grantee may elect to treat this as an entire failure of title, and is entitled to recover the full value of the property."

The case cited in the footnote to support the text is *Robinson* v. *Coulter*, 90 Tenn. 705, 18 S. W. 250, 251, 25 Am. St. Rep. 708, and note.

■ The facts in the above case show there was a breach of the covenants of seisin and the right to convey. The court held that the vendee was entitled to rescind the contract of sale of a certain lot conveyed to him with certain other property at an agreed valuation. The author is sustained in the above statement by the decision, in which is found the following language: "The complainant had the right to elect to treat this as an entire failure of title, and is entitled to recover the full value of the lot, the effect of such decree revesting title in the defendant, * *." But

the principle has no application to the facts in the case under consideration. The plaintiff discovered the defect in her title before executing either of the two deeds of trust mentioned. If upon discovering the defect she had elected to rescind, she would have brought her case in line with the above decision, but she retained the land after discovering the defect in her title, executed the two deeds of trust above mentioned, defaulted in the payment of the debts thereby secured, permitted a sale under the second deed of trust, and hence by her own voluntary act put herself in such a position that she is now incapable of restoring to her vendor the property obtained by the deed.

It is true that she tendered in court a deed purporting to reconvey the interest she received in the seven acres after she knew that there had been a sale under the Kessler deed of trust. The court rightly held that such a deed was a nullity.

The weight of authority seems to be that the covenants of seisin and the right to convey (usually synonymous) are broken, if at all, as soon as made, and the existence of an outstanding paramount title permits the grantee to institute action without averring eviction or special damages. *Kinzie* v. *Riely*, 100 Va. 709, 42 S. E. 872; *Bldg. L. & W. Co.* v. *Fray*, 96 Va. 559, 32 S. E. 58, 60; note to 17 L. R. A. (N. S.) 1185; 7 R. C. L. 1156; 15 C. J. 1246, 1267.

In *Douglass* v. *Lewis*, 131 U. S. 75, 9 S. Ct. 634, 33 L. Ed. 53, Chief Justice Fuller in construing a deed made under a New Mexico statute, which statute was copied from the Missouri Code, stated that the law is equally well settled there that the statutory covenant of seisin is merely a covenant for indemnity, and that nominal damages, only, are recoverable until the estate conveyed is defeated or real injury sustained.

It is settled in Virginia that the measure of damages for breach of the covenant of the right to convey where

nothing passes by the deed is the consideration paid, with interest. *Bldg. L. & W. Co.* v. *Fray, supra; Norfolk, etc., R. Co.* v. *Mundy*, 110 Va. 422, 66 S. E. 61.

If a title is found defective as to a part of the land, the vendee is entitled to damages for that part lost according to its relative value to the whole tract at the time of the conveyance. *Clarke* v. *Hardgrove*, 7 Gratt. (48 Va.) 399; *Butcher* v. *Peterson*, 26 W. Va. 447, 454; 53 Am. Rep. 89; *Heavner* v. *Morgan*, 30 W. Va. 335, 343, 4 S. E. 406, 411, 8 Am. St. Rep. 55; *Renick* v. *Renick*, 5 W. Va. 285, 291; *Heavner* v. *Morgan*, 41 W. Va. 428, 23 S. E. 874, 880; *Humphreys* v. *M'Clenachan*, 1 Munf. (15 Va.) 493; *Conrad* v. *Effinger*, 87 Va. 59, 12 S. E. 2, 24 Am. St. Rep. 646.

Judge Cardwell stated in the case of *Building L. & W. Co.* v. *Fray, supra,* "that the weight of American authority has determined that the covenant of seisin is broken, if at all, so soon as it is made, and thereby the immediate right of action accrues to him who has received it. But in such case the grantee is not entitled, as a matter of course, to recover back the consideration money. The damages to be recovered are measured by the actual loss at the time sustained. If the purchaser has bought in the adverse right, the measure of his damage is the sum paid. If he has been deprived of the whole subject of his bargain, or of a part of it, they are measured by the whole consideration in the one case, a corresponding part in the other."

The above instruction permitted the plaintiff to recover the entire consideration named in the deed, although by retaining the property after she knew of the defect in the title she had elected not to rescind the contract. It follows that there was no error in the action of the trial court in setting aside the first verdict.

On the second trial, the plaintiff insisted that the court give the same instruction. This the court refused to do and made the following notation on the instruction: "No damage

shown by reason of the breach of the covenant." From what has been said, it follows that we are of opinion that the court was correct in refusing the instruction.

When the introduction of the evidence for both parties had been completed, the court sustained a motion made by the defendant to strike out all the evidence on damages offered by the plaintiff. This action of the court is assigned as error.

The only evidence which the plaintiff claims was affected by this ruling was a part of her own testimony and a part of that of her husband, A. K. Otey, as follows:

"That Ardella F. Otey could not prevent the foreclosure under the second mortgage inasmuch as she could not renew the first loan because of the defective title, and Oakey's refusal to indorse a renewal bond," and to the further effect "that had the title been clear she could have obtained a new loan or a renewal of the existing loan and thus would have been able to save her property."

This evidence does not aid us in ascertaining the amount of damages which the plaintiff suffered by reason of the defect in the title. It was necessary for the plaintiff to prove the consideration she paid for the property.

She testified that she had inherited $2,500.00, which she had invested "through mesne conveyances" in an undivided one-half interest in the house and lot in the city of Roanoke. When she inherited this money, how long she had owned the one-half interest in the Roanoke city property, and whether it had increased or decreased in value since she obtained it is not shown by the evidence. Just what she means by saying she invested the money in the Roanoke city property "through mesne conveyances" is not clear. From her evidence we gather that she had inherited $2,500.00, which she had invested in some way; that in July, 1926, the investment was in the form of a one-half undivided interest in this house and lot in the city of Roanoke, but she fails to show its value at that time.

■ ■ The defendant offered to prove by three real estate men that the total fee simple value of the Roanoke city property in July, 1926, was from $2,500.00 to $3,000.00. If this was the true value it may be assumed that the value of the plaintiff's interest was from $1,250.00 to $1,500.00. The plaintiff objected to this evidence and the court sustained the objection. Evidence is admissible to show that the actual consideration paid was different from that stated in the deed, provided such evidence does not alter or contradict the legal effect of the deed. But there was no exception taken by the defendant to the ruling of the court.

From the evidence which was permitted to go to the jury it is difficult to ascertain the value of the consideration that the plaintiff paid for the land conveyed to her. Nor was any testimony offered by either party showing the value of the one-half interest in the seven acres at the time the deed was executed in 1926, either with or without the defect in title. The plaintiff herself testified that the $2,500.00 consideration set out in the deed was not the true consideration. The burden was on her to prove with reasonable certainty any damage which she may have sustained. This she has failed to do.

■ The proof of the alleged defect in title is even more vague. The only evidence on this subject is the testimony of R. S. Kime and the defendant W. H. Oakey. Kime testified that "he found from the records an outstanding undivided one-half interest in the whole of said property, vested in some of the Deyerle heirs, and that while Mrs. Otey received color of title by the deed of Oakey to her, she did not obtain a clear record, marketable title to the one-half interest purported to have been conveyed to her. That the defect in the title arose in 1884, and there was no break in the chain of the title from 1904 until the present time of the one-fourth interest which Mrs. Otey actually received. That in 1904 Sue Hatcher received only one-half of what she

was supposed to get by the deed to her, but obtained color of title to the other one-half. There is no break in the chain of deeds from Sue Hatcher to date as to the interest she actually received in 1904. That the undivided one-half interest vested in the Deyerle heirs has never been divested by any conveyances of record."

Oakey testified that Mr. Kime reported to him in 1927 that title to the seven acre tract was defective but he did not think it was; that he had owned the property for three years and that no adverse claim had ever been asserted to it so far as he knew.

From the above, we are unable to say whether or not the title to the property was in fact defective, or, if defective, whether adverse possession for the statutory period would cure the defect.

A careful inspection of the record and the briefs fails to disclose any error committed by the trial court of which the plaintiff can complain. The judgment, therefore, is

*Affirmed.*