DANIEL F. McCARTHY, Plaintiff-Appellee, v. PEDERSEN AND HOUPT et al., Defendants-Appellants.

First District (5th Division) No. 1—92—3250

Opinion filed July 23, 1993.

Ross & Hardies, of Chicago (Gary L. Starkman and Steven B. Rissman, of counsel), for appellants.

David K. Anderson, of Skokie (Phil Horn, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Defendants Pedersen & Houpt, Arthur M. Holtzman and Donald J. Moran appeal from the denial of their summary judgment motion in this legal malpractice suit filed against them by plaintiff Daniel F. McCarthy. The circuit court certified for appeal the issue of "whether the settlement of a lawsuit by a plaintiff, in the undisputed facts and circumstances of this case, precludes a subsequent complaint against his trial counsel for attorney malpractice."

The relevant facts are as follows. In 1985, defendants filed McCarthy v. PaineWebber, Inc., 85—C—3328, asserting commercial litigation claims on plaintiff's behalf in the United States District Court for the Northern District of Illinois. The case went to trial in 1989, and after the close of evidence, but before the jury returned its verdict, plaintiff agreed to settle the case. After plaintiff had an independent attorney, not associated with the defendant law firm, review the

settlement agreement, the settlement agreement and mutual general release were executed.

Plaintiff then brought suit in the circuit court of Cook County asserting attorney malpractice against the defendants, the attorneys who represented plaintiff in the underlying lawsuit. The complaint alleged that the attorneys failed to file a timely claim under the Commodities Exchange Act and negligently selected an unqualified expert. Defendants filed a summary judgment motion asserting that plaintiff's voluntary decision to settle the underlying case, particularly in light of the intervention of independent counsel, precluded the instant attorney malpractice claim. The circuit court denied the motion, stating that it could not determine as a matter of law that plaintiff's suit was barred. However, due to the fact that there was no Illinois case law addressing the issue of whether a plaintiff who settles an underlying claim may then sue the attorney who represented him in that claim for malpractice, the circuit court certified the question for appeal under Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)).

As the circuit court correctly noted, the issue that has been certified is one of first impression in Illinois. We therefore look for guidance outside of Illinois. As defendants point out, several other jurisdictions have held that the settlement of the underlying suit bars a plaintiff's malpractice action against the attorney who handled the underlying claim.

In *Mitchell v. Transamerica Insurance Co.* (Ky. Ct. App. 1977), 551 S.W.2d 586, plaintiffs brought a malpractice suit against their attorney, alleging that the attorney allowed the statute of limitations to run on plaintiffs' personal injury suit. The court of appeals of Kentucky found that because plaintiffs were able to bring the same cause of action in another jurisdiction that had a longer statute of limitations, and ultimately received a substantial settlement there, plaintiffs failed to prove they suffered any damages as a result of the attorney's malpractice. The court explained:

"The [plaintiffs] argue that they could have received more damages if the case had been tried in Kentucky. However, the evidence, in our opinion, on this point is a matter of conjecture and speculation. It may have been a different case if the [plaintiffs] had tried their case in Indiana and had come away with patently inadequate damages. The fact is that they settled their case for $60,000. *** It seems to us that the [plaintiffs'] argument as to damages is an exercise in the pyramiding of an inference upon an inference. Trying to predict what a jury might

do at any given time or place is hazardous and is one of the vagaries of life." *Mitchell*, 551 S.W.2d at 588.

See also *Douglas v. Parks* (N.C. Ct. App. 1984), 315 S.E.2d 84 (wherein the North Carolina Court of Appeals held that because plaintiff affirmed the settlement agreement, he was precluded from bringing a malpractice suit against the attorney who represented him in that original action); *Glenna v. Sullivan* (Minn. 1976), 245 N.W.2d 869 (wherein the supreme court of Minnesota held that, "[t]o allow a client who becomes dissatisfied with a settlement to recover against [an] attorney solely on [the] ground that [a] jury might have awarded more than the settlement is unprecedented"); *Davenport v. Stone* (Fla. Dist. Ct. App. 1988), 528 So. 2d 45 (wherein the court of appeals of Florida held that plaintiff could not maintain a lawsuit for attorney malpractice since plaintiff voluntarily entered into a settlement agreement in the underlying suit, was fully advised by competent counsel and suffered no damages).

In *Schlomer v. Perina* (1991), 163 Wis. 2d 708, 473 N.W.2d 6, the court of appeals of Wisconsin determined that it was against public policy to allow the plaintiff to bring suit against his attorney for malpractice on the theory that the attorney's three years' inactivity caused a lesser settlement and caused the client loss of use of money from an earlier and larger settlement. To allow such a claim, the court stated, would open the door to malpractice claims whereby there is no just or sensible stopping point.

The plaintiff here, in turn, claims that the Illinois Supreme Court decision in *McLane v. Russell* (1989), 131 Ill. 2d 509, 546 N.E.2d 499, is directly on point and resolves this issue in favor of plaintiff. We fail to see how this case has any bearing on the issue of whether a plaintiff who settled his underlying case may then sue the attorney who represented him in that underlying suit for malpractice. Although plaintiff has cited no other cases to support his position, our research has revealed several cases from outside this jurisdiction that have held that a plaintiff may sue his attorney for malpractice despite the fact that plaintiff signed a settlement agreement in the underlying suit.

Several New York cases addressing this issue have found that where a plaintiff alleges that he was forced to settle the underlying case due to his attorney's mishandling of that case, plaintiff may sue his attorney for malpractice. In *Becker v. Julien, Blitz & Schlesinger, P C* (1977), 95 Misc. 2d 64, 406 N.Y.S.2d 412, *modified on other grounds* (1978), 66 A.D.2d 674, 411 N.Y.S.2d 17, the court stated:

"In many, if not most instances involving an alleged malpractice by attorneys, the underlying litigation has been terminated—by allowing the Statute of Limitations to lapse, by suffering a default or dismissal and the like. Often it is the very fact of termination of the action which gives rise to the claim for malpractice. Where the termination is by settlement rather than by a dismissal or adverse judgment, malpractice by the attorney is more difficult to establish, but *a cause of action can be made out if it is shown that assent by the client to the settlement was compelled because prior misfeasance or nonfeasance by the attorneys left no other recourse.* \*\*\* *[T]he cause of action for legal malpractice must stand or fall on its own merits, with no automatic waiver of a plaintiff's right to sue for malpractice merely because plaintiff had voluntarily agreed to enter into a stipulation of settlement.*" (Emphasis added.) (*Becker*, 95 Misc. 2d at ____, 406 N.Y.S.2d at 413-14.)

However, based on the particular facts in that case, the court granted summary judgment in favor of the defendant attorneys since plaintiff did not show that he settled only because his attorney's misconduct left him no other alternative. Furthermore, the court noted that plaintiff failed to provide any evidence that the value of his underlying claim exceeded that which he settled for.

The courts in *Wolstencroft v. Sassower* (1986), 124 A.D.2d 582, 507 N.Y.S.2d 728, and *Cohen v. Lipsig* (1983), 92 A.D.2d 536, 459 N.Y.S.2d 98, did find the plaintiffs' legal malpractice claims to be viable despite the settlement of the underlying suits. Both decisions were based on the fact that the complaints alleged that the settlements were effectively compelled by the mistakes of the defendants, plaintiffs' former attorneys. But see *N.A. Kerson Co. v. Shayne, Dachs, Weiss, Kolbrenner, Levy & Moe Levine* (1977), 59 A.D.2d 551, 397 N.Y.S.2d 142 (wherein the court held that an action based upon alleged mistakes of counsel prior to settlement could not be brought since plaintiff's settlement terminated the underlying litigation); *Carmel v. Lunney* (1986), 119 A.D.2d 50, 505 N.Y.S.2d 735 (wherein plaintiff brought suit against his criminal defense lawyer for malpractice after plaintiff had voluntarily pled guilty to the criminal charges and the court found that any causal connection between the attorney's malpractice and plaintiff's conviction was broken by plaintiff's own voluntary act resulting in conviction).

Jurisdictions other than New York have also refused to state that, as a matter of law, a plaintiff who has settled his underlying case is barred from suing his attorney for malpractice. In *Lowman v. Karp*

(1991), 190 Mich. App. 448, 476 N.W.2d 428, plaintiff claimed that after she informed defendant that she did not want to settle, defendant flatly refused to try the case. The court of appeals of Michigan concluded that plaintiff's settlement of the underlying action should not act as a bar to a subsequent legal malpractice action since the matter arose so close to the trial date that it would have been nearly impossible for plaintiff to obtain another attorney and plaintiff's settlement was therefore her only reasonable choice. See also *Espinoza v. Thomas* (1991), 189 Mich. App. 110, 472 N.W.2d 16 (wherein the Michigan Court of Appeals held that the pleadings and evidence were sufficient to at least raise an inference that the low settlement award and plaintiff's acceptance of the award were caused by defendant's malpractice).

In *Braud v. New England Insurance Co.* (La. Ct. App. 1988), 534 So. 2d 13, plaintiffs claimed that as a result of the attorney's negligence, they were forced to settle the case for less than it was worth. Defendant moved for summary judgment stating that it was plaintiffs' settlement with the defendant in the underlying suit that caused the loss and not the attorney's negligence. The Louisiana Court of Appeals noted that if the attorney's negligence caused plaintiffs to settle the suit, then it also caused the loss. The court stated:

"It begs the question to argue that the settlement rather than the attorney's negligence caused the loss when the same negligence is allegedly the only reason that the [plaintiffs] were put in the position of having to consider settlement." (534 So. 2d at 15.)

The court, therefore, reversed the summary judgment motion that had been granted in defendant's favor, stating that only a trial on the merits could fully and fairly resolve this issue.

Furthermore, in *Bill Branch Chevrolet, Inc. v. Burnett* (Fla. Dist. Ct. App. 1990), 555 So. 2d 455, plaintiff sued for malpractice claiming that, three weeks before trial, it discovered that the attorney failed to investigate or conduct discovery necessary to adequately prepare for trial and, faced with a claim for punitive damages and no trial preparation, plaintiff was forced to settle the case for a sum greater than its actual liability. The court of appeals of Florida could not determine as a matter of law that the settlement of the underlying case negated any legal malpractice as a proximate cause of loss and also concluded that the question of whether plaintiff can prove damages beyond speculation is an issue for the trier of fact.

Likewise, in *Fishman v. Brooks* (1986), 396 Mass. 643, 487 N.E.2d 1377, the plaintiff claimed that he settled the underlying case

shortly before trial knowing that the attorney was not prepared to try the case. The supreme court of Massachusetts noted that, "The typical case of malpractice liability for an inadequate settlement involves an attorney who, having failed to prepare his case properly or lacking the ability to handle the case through trial (or both), causes his client to accept a settlement not reasonable in the circumstances." (*Fishman*, 396 Mass. at 646, 487 N.E.2d at 1380.) The court therefore upheld a jury verdict finding the attorney liable for negligently causing a client to settle a claim for an amount below what a properly represented client would have accepted.

Other courts allow such suits to survive the summary judgment stage only when the plaintiffs can show that they would have recovered more had the case gone to trial. See *Carlson v. Fredrikson & Byron* (Minn. Ct. App. 1991), 475 N.W.2d 882 (court of appeals of Minnesota found that summary judgment was properly granted in favor of defendants where plaintiff failed to show that had defendants more vigorously represented him, he would have received a better settlement or the case would have gone to trial and he would have received a more favorable result there); *Sander v. Townsend* (Ind. Ct. App. 1987), 509 N.E.2d 860 (the court of appeals of Indiana determined that summary judgment was properly granted in attorney's favor since plaintiff failed to show that had the attorney not been negligent, the settlement or verdict award would have been greater).

At least one court allows plaintiffs to sue their attorneys for malpractice even after settling the underlying suit only when the complaint alleges that the attorneys acted fraudulently. The Pennsylvania Supreme Court in *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick* (Pa. 1991), 587 A.2d 1346, concluded that when a plaintiff has agreed to a settlement, he may not sue his attorney for malpractice based on negligence and or contract principles. Rather, only cases of fraud should be actionable. The court explained that if a lawyer knowingly commits malpractice, but does not disclose the error and convinces the client to settle in order to avoid the discovery of such error, then the plaintiff's agreement was fraudulently obtained. The court reached this decision because of its long-standing public policy encouraging settlement.

The supreme court of New Jersey in *Ziegelheim v. Apollo* (1992), 128 N.J. 250, 607 A.2d 1298, expressly disagreed with the Pennsylvania decision, stating that although New Jersey also has a long-standing policy that encourages settlement, a dissatisfied plaintiff may bring suit against his attorney for malpractice in negotiating a settlement even in the absence of a showing of actual fraud.

We are faced with the limited question of whether, under the undisputed facts and circumstances of this case, plaintiff's legal malpractice case is barred due to the fact that plaintiff settled the underlying action. The undisputed facts in the instant case are that the underlying suit was settled and independent counsel reviewed the settlement agreement before it was signed by plaintiff. What remains disputed, however, is whether defendants were negligent in their handling of the underlying case and whether plaintiff was damaged by such negligence. Furthermore, the parties dispute the extent of independent counsel's involvement in the settlement. Certainly plaintiff should be permitted to develop these facts at trial. Although there is no Illinois case law on this issue, we are persuaded by those cases from outside this jurisdiction holding that only a trial on the merits can fully and fairly resolve the issue of whether an attorney is liable for malpractice despite the fact that the underlying case was settled. To hold otherwise could create ethical problems where an attorney, knowing that he mishandled a case, encourages his client to settle in order to shelter himself from a malpractice claim. The rule espoused here will avoid such conflicts of interest and allow a malpractice claim to succeed or fail on its merits. Accordingly, we conclude that based on the facts and circumstances presented here, the trial court properly refused to grant summary judgment in favor of defendants.

Affirmed.

GORDON, P.J., and MURRAY, J., concur.