First Division

December 19, 2005

No. 1-04-3823

SHERRY WEBB, RONALD McCOY, a Minor, By and Through His Mother, Guardian, and Next Friend, SHERRY WEBB, and PHILLIP McCLAIN, a Minor, By and Through His Mother Guardian, and Next Friend, MARGIE WEBB,  

Plaintiffs-Appellants,

v. 

MARK W. DAMISCH and A. HAYES BARCLAY d/b/a DAMISCH and DAMISCH and/or BARCLAY and DAMISCH, LTD.,

Defendants-Appellees. 
.

)

)

)

)

)

)

)

)

))

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

03 L 009783

Hon. Judge Lynn M. Egan,

Judge Presiding

JUSTICE McBRIDE delivered the opinion of the court:

Appellants Sherry Webb, Ronald McCoy, Phillip McClain, and Margie Webb (collectively Plaintiffs), appeal the trial court's order dismissing appellants' legal malpractice case against Appellees Mark Damisch and A. Hayes Barclay, d/b/a Damisch & Damisch and/or Barclay & Damisch, Ltd (collectively Defendants).  Plaintiffs hired defendants to represent them in recovering damages for plaintiffs' injuries suffered in an August 1997 automobile accident.  Plaintiffs sued defendants for legal malpractice alleging that defendants were negligent in failing to sue General Motors (GM) for strict liability of a manufacturing defect in the automobile in which plaintiffs were traveling.  Defendants filed a motion to dismiss the legal malpractice suit pursuant to sections 2-619(a)(4) and (a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(4), (a)(9) (West 2000)).  Defendants asserted plaintiffs could not establish either the proximate causation or damages elements of legal malpractice because plaintiffs' successor counsel sued GM for strict liability and negotiated a settlement in plaintiffs' favor for $2,265,000.  The trial court granted defendants' motion to dismiss under section 2-619(a)(9).  Plaintiffs appeal the trial court's dismissal.  For the reasons that follow, we affirm.

Sherry Webb, Ronald McCoy and Phillip McClain were involved in an automobile accident on August 17, 1997, in which they sustained injuries.  Sherry Webb is the mother of Ronald McCoy (a minor).  Margie Webb is the mother of Phillip McClain (a minor).  It is unclear from the record how Sherry and Margie Webb are related.

The parties do not dispute that the 1988 Oldsmobile Cutlass Supreme Sherry Webb was driving was the sole cause of the accident.  Ronald McCoy and Phillip McClain were passengers in the car at the time of the accident.  Sherry Webb was driving southbound on Indianapolis Boulevard near 103rd street in Chicago, Illinois.  Without warning, Sherry Webb lost control of the car.  The steering and brakes of the car completely failed.  The car in which plaintiffs were traveling struck an automobile next to it, crossed over into northbound lanes and struck another automobile head on.

The Oldsmobile manufacturer, GM, had issued recall notices for numerous defects with the Oldsmobile, including an October 1990 recall for the front shoulder belt anchor and a March 1995 Safety Campaign Bulletin pertaining to cracks that may develop in the wheel mounting surface.  The March 1995 Safety Campaign Bulletin states in part:

"These vehicles may exhibit a condition in which cracks develop in the wheel mounting surface and, should the cracks become severe enough, the wheel could completely separate from the vehicle.  If this were to occur while the vehicle was in motion, steering and braking control of the vehicle could be affected, and a vehicle crash could result without prior warning."

This Safety Campaign Bulletin was issued for all 1988 Oldsmobile Cutlass Supremes falling between a certain Vehicle Identification Number (VIN) range.  The Oldsmobile driven by Sherry Webb fell within the subjected range.

In late August or early September 1997, defendants were retained to represent dlaintiffs in an effort to obtain compensation for the injuries suffered during the automobile accident.  Defendants filed suit against the seller of the Oldsmobile, Sierra Auto Sales (Sierra), but subsequently voluntarily dismissed the suit.  The record does not contain any information pertaining to the lawsuit Defendants filed against Sierra, such as when Sierra was sued, what the cause of action was against Sierra, or why the case was voluntarily dismissed.  

Although defendants were given a copy of the March 1995 Safety Campaign Bulletin by Margie Webb sometime in or around September 1997, they did not pursue a cause of action against GM. At some point after September 1997, defendants stopped representing plaintiffs.  Again, the record does not indicate when or how this relationship ended.  The record does not indicate when successor counsel actually began representing plaintiffs, but on April 12, 2002, McCoy and McClain, represented by successor counsel, sued GM in the circuit court of Cook County for strict liability, asserting that manufacturing defects in the Oldsmobile contributed to the accident and plaintiffs' injuries.  On July 12, 2002, Sherry Webb, represented by the same successor counsel, was added as a plaintiff to the strict liability suit against GM.  On February 21, 2003, the two sides pursued mediation and the strict liability lawsuit settled for $2,265,000, which was referred to in the settlement agreement as "fair and reasonable."  The settlement amount was divided amongst the plaintiffs.  Sherry Webb received $15,000; Ronald McCoy received $250,000; and Phillip McClain (who was rendered a paraplegic as a result of the accident) received $2 million.

On May 17, 2004, plaintiffs, represented by the same successor counsel that negotiated their settlement with GM, filed a second amended complaint against defendants for legal malpractice resulting from defendants not filing suit against GM for strict liability.  In particular, Sherry Webb alleged that as a result of defendants' failure to timely file suit on her behalf, the applicable statute of limitations expired and she permanently and irrevocably lost her right of filing a strict liability action against GM.  McCoy and McClain both alleged that defendants were negligent in failing to secure the Oldsmobile for use as evidentiary material on the issue of whether a manufacturing defect caused the August 1997 accident.  As a result, McCoy and McClain claimed they lost the full value of recovery against GM and incurred additional attorney fees and expenses addressing the issue.  Sherry Webb, Ronald McCoy and Phillip McClain each prayed for judgment against defendants in excess of $50,000.  Because Sherry Webb's claim of legal malpractice differs from that of McCoy and McClain, we will address Webb's claim first and will address McCoy and McClain's claims together as they are identical.

Defendants moved to dismiss Plaintiffs' legal malpractice complaint under sections 2-619(a)(4) and (a)(9).  Defendants argued that Sherry Webb was not time-barred from bringing a strict liability suit against GM primarily because of the July 12, 2002, complaint (which was attached to their motion) showing Sherry Webb as a plaintiff in a strict liability suit against GM.  Additionally, defendants argued that McCoy and McClain could not establish that the loss of the car prevented them from securing the full value of their suit because GM settled the strict liability suit with Sherry Webb, Ronald McCoy and Phillip McClain for $2,265,000.  The settlement agreement between plaintiffs and GM detailed the terms of the settlement and was entered by the trial judge in the circuit court of Cook County and was attached to their motion to dismiss.  

In responding to the defendants' motion, plaintiffs argued that a review of their attached exhibits (a police report from the August 1997 accident, a signed witness statement from Chicago police officer James Bartkowiak, and the March 1995 General Motors Safety Campaign Bulletin) showed clear proof that defendants caused plaintiffs' damages.  Plaintiffs also pointed to their medical expenses as further evidence of damages.  Plaintiffs alleged that Sherry Webb accrued $113,564.07 in medical bills, Ronald McCoy accrued $89,776.97 in medical bills, and Phillip McClain accrued $202,160.93 in medical bills.  The record, however, does not contain any medical bills.  Plaintiffs repeated their charge that because of defendants' negligence, they lost the full value of their claim and that a partial settlement of the underlying case did not bar plaintiffs from pursuing the legal malpractice action against defendants.

Defendants reply addressed plaintiffs' failure to controvert the proofs offered in support of defendants' motion to dismiss.

The trial court granted defendants motion to dismiss pursuant to section 2-619(a)(9), which permits a dismissal when "[t]he claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."  735 ILCS 5/2-619(a)(9) (West 2000).  Plaintiffs appeal the trial court's dismissal.

We review whether the trial court properly granted defendants' motion to dismiss plaintiffs' legal malpractice case pursuant to section 2-619(a)(9).  Plaintiffs contend that only a trial on the merits will fully and fairly decide whether an attorney is liable for malpractice despite the fact that the underlying case was settled.  Defendants maintain that plaintiffs sustained no damages as a result of defendants' representation because plaintiffs ultimately sued GM for strict liability and settled their strict liability lawsuit with GM for a "substantial sum * * * which all parties deemed fair and reasonable."

A motion to dismiss under section 2-619 "allow[s] for a threshold disposition of questions of law and easily proven issues of fact."  
Mio v. Alberto-Culver
, 306 Ill. App. 3d 822, 824 (1999).  Under section 2-619, a motion to dismiss should be granted if after construing the pleadings and supporting documents in the light most favorable to the nonmoving party, the trial court finds that no set of facts can be proved upon which relief could be granted.  
Mio
, 306 Ill. App. 3d at 825.  This process does not require the trial court to weigh facts or determine credibility and as a result, this court does not defer to the trial court's judgment.  
Mio
, 306 Ill. App. 3d at 825.  Therefore, upon review we consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal was proper as a matter of law.  
Mio
, 306 Ill. App. 3d at 825.  We review motions to dismiss under section 2-619 
de-novo
.  
Mio
, 306 Ill. App. 3d at 825.  We may sustain the trial court's section 2-619 dismissal for any basis found in the record.  
Mio
, 306 Ill. App. 3d at 825.  

An action may be dismissed under section 2-619(a)(9) on the ground that a claim asserted is barred by other affirmative matter avoiding the legal effect of or defeating the claim.  735 ILCS 5/2-619(a)(9) (West 2000).  The term "affirmative matter" includes a defense that completely negates the asserted cause of action.
  
Serafin v. Seith
, 284 Ill. App. 3d 577, 583 (1996).  Affirmative matter asserted by the defendant must be apparent on the face of the complaint or supported by affidavits or other evidentiary materials.  
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370, 383 (1997).

Defendants' motion included copies of plaintiffs' second amended complaint against GM and the settlement agreement in that case.  This supporting material will suffice to support consideration of Defendants' motion.  See 
Geick v. Kay
, 236 Ill. App. 3d 868, 874 (1992).

A trial court may properly dismiss a complaint where the affirmative matter refutes crucial conclusions of law or material fact that are unsupported by allegations of specific facts.  
Serafin, 
284 Ill. App. 3d at 583.  The affirmative matter must be more than evidence offered to refute a well-pleaded fact in the complaint as such well-pleaded facts must be taken as true.  
Serafin, 
284 Ill. App. 3d at 583.  Further, if the opponent to a section 2-619 motion does not counter the proofs offered in support of the motion and the movant's showing of undisputed facts would entitle the movant to judgment as a matter of law, a dismissal pursuant to section 2-619 is proper.  
Wood v. Village of Grayslake
, 229 Ill. App. 3d 343, 350 (1992).

To properly state a cause of action for legal malpractice, plaintiffs must allege in their complaint: (1) the existence of an attorney-client relationship that establishes a duty on the party of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that "but for" the attorney's negligence, the plaintiffs would have prevailed in the underlying action; and (4) damages.  
Cedeno v. Gumbiner
, 347 Ill. App. 3d 169,174 (2004).  The basis of such a claim is that had it not been for negligence on the part of plaintiff's attorney, plaintiff would have been compensated for an injury caused by a third party.  
Cedeno
, 347 Ill. App. 3d at 174.  When an attorney's negligence is alleged to have occurred during the representation of a client in the underlying action, plaintiff must prove that counsel's negligence resulted in the loss of the underlying action.  
Cedeno
, 347 Ill. App. 3d at 174.  This means that plaintiff must prove a "case within a case."  
Cedeno
, 347 Ill. App. 3d at 174.  If the underlying cause remained actionable at the time plaintiffs hired successor counsel, plaintiffs can prove no set of facts that connect defendants' conduct with any damage plaintiffs sustained.  
Cedeno
, 347 Ill. App. 3d at 174.

We first address Sherry Webb's claim of legal malpractice.

Sherry Webb alleged in her malpractice action that as a result of defendants' failure to timely sue GM for a manufacturing defect, she permanently and irrevocably lost her right to timely sue GM for strict liability as a result of the August 1997 accident.  Defendants' submissions, however, which are not contested, show that Sherry Webb was a party to a strict liability suit against GM; that the strict liability suit was filed on July 12, 2002 by successor counsel after defendants were no longer representing plaintiffs; and successor counsel successfully negotiated a settlement with GM in the strict liability case.  

Sherry Webb did not dispute that she was a named plaintiff in the July 12, 2002, complaint against General Motors for strict liability; she did not dispute that the strict liability suit was timely filed; or that she received $15,000 in the settlement with GM.  What she claims, without any documentary evidence or specific fact, is that the $15,000 settlement she received was not enough.  The settlement agreement indicates that the sum received was fair and reasonable. 

Contrary to the undisputed facts, the language of Sherry Webb's complaint states that she "permanently and irrevocably lost her right of action against General Motors due to the expiration of the applicable statute of limitations."  However, based on the evidence presented in the record, specifically, the July 2002 complaint in which Sherry Webb was named as a plaintiff in a strict liability suit against GM and the settlement agreement in that case, it is clear that Sherry Webb did not "permanently and irrevocably [lose] her right of action against General Motors."  

Moreover, the underlying case remained actionable at the time successor counsel began representing Sherry Webb, and successor counsel successfully settled the case on Sherry Webb's behalf.  
Sherry Webb cannot prove any facts that would connect defendants' conduct with any damage she sustained.  
Cedeno
, 347 Ill. App. 3d at 174; 
Land v. Greenwood
, 133 Ill. App. 3d 537 (1985) (noting that because the cause of action remained viable at the time defendant was discharged as counsel, and plaintiff hired new counsel, plaintiff could not connect defendant's conduct to any of plaintiff's damages)
.  

Where a party moving to dismiss a case pursuant to section 2-619 presents affirmative matter containing well-pleaded facts, and the party opposing the motion does not file any supporting documentation countering the facts, the moving party's affirmative matter is accepted as true despite any contrary assertions in the opposing party's pleading.  
Wood
, 229 Ill. App. 3d at 349-50.  Therefore, we conclude that because Sherry Webb was able to file a strict liability cause of action against General Motors, has presented no facts to support her claim that the settlement was anything but fair and reasonable, or that the running of a statute of limitations resulted in the dismissal of her action or resulted in her settling the case for a lesser amount of damages the trial court properly granted Defendants' motion to dismiss Sherry Webb's claim of legal malpractice.

We now turn to Ronald McCoy's and Phillip McClain's claim of legal malpractice.  We address these claims together as they are identical.

McCoy and McClain both alleged that defendants were negligent in failing to secure the Oldsmobile for use as evidentiary material on the issue of whether a manufacturing defect caused the August 17, 1997, accident.  As a result, McCoy and McClain claim they lost the full value of recovery against GM and incurred additional attorney fees and expenses addressing the issue.  As pointed out above, defendants' motions to dismiss were supported by the strict liability complaint McCoy and McClain filed against GM, but also the settlement agreement in that case.  Additionally, defendants pointed out that plaintiffs and GM referred to the settlement amount was "fair and reasonable."

McCoy and McClain responded by directing the court to their medical expenses, but did not submit documentary evidence of medical bills in their response.  They did not counter with any exhibits to show that the medical bills were paid, that they were associated with their damages, or that the amount they received in the settlement with GM was not fair and reasonable.  

The settlement agreement shows that Ronald McCoy received $250,000 from GM and Phillip McClain received $2 million from GM, but there is nothing in the record to contradict that the settlement with GM was for anything less than full value of plaintiffs' claim.  In fact, plaintiffs' settlement agreement with GM refers to the settlement as "fair and reasonable."  Where a party moving to dismiss a case pursuant to section 2-619 presents affirmative matter containing well-pleaded facts, and the party opposing the motion does not file any supporting documentation countering the facts, the moving party's affirmative matter is accepted as true despite any contrary assertions in the opposing party's pleading.  
Wood
, 229 Ill. App. 3d at 349-50.  Based upon the above, we can only conclude that defendants' failure to secure the Oldsmobile for evidentiary material on the issue of manufacturing defect did not prevent McCoy and McClain from receiving full value from GM.  

We also point out that the proximate cause element of a legal malpractice claim requires that the plaintiffs must plead facts sufficient to show that, but for the attorneys' malpractice, the clients would have been successful in the undertaking the attorneys were retained to perform. 
 Serafin
, 284 Ill. App. 3d at 587.  The facts before this court, when viewed in a light most favorable to the plaintiffs, show that in spite of defendants failure to file a strict liability claim against GM, plaintiffs by way of successor counsel were able to file a strict liability claim against GM.  Plaintiffs' new counsel filed multiple strict liability claims against GM.  Additionally, plaintiffs' new counsel was successful in recovering damages on the strict liability claims against GM and negotiated a "fair and reasonable" settlement for plaintiffs consisting of what Margie Webb described as a "substantial sum" of money ($2,265,000).
(footnote: 1)
 Plaintiffs argue that their settlement with GM represents only a "partial settlement," but presented no facts to support this claim.  Plaintiffs contend that had defendants initially brought a strict liability claim against GM, plaintiffs would have been able to recover more damages.  In support of their "partial settlement" claim, plaintiffs point to the recovery amounts each received and contrast that with the medical bills for each.  Plaintiffs, however,  failed to present any facts that their settlement with GM was anything other than a full settlement for injuries suffered as a result of the August 17, 1997, automobile accident.  It is simply not enough for plaintiffs to indicate these amounts represent plaintiffs' medical bills and therefore the settlement is not full, fair, or reasonable.  Consequently, plaintiffs did not suffer any damages as a result of defendants' failure to secure the Oldsmobile or defendants failure to sue GM earlier then successor counsel.  
Cedeno
, 347 Ill. App. 3d at 174, 806 N.E. 2d 1188. 

Finally, plaintiffs argue that this case is controlled by 
McCarthy v. Pedersen & Houpt
, 250 Ill. App. 3d 166 (1993).  In 
McCarthy
, the defendants filed commercial litigation claims on plaintiff's behalf in federal court.  
McCarthy
, 250 Ill. App. 3d at 166.  The case went to trial, and after the close of evidence but before the jury returned a verdict, plaintiff agreed to settle the case.  
McCarthy
, 250 Ill. App.3d at 166.  After plaintiff had an independent attorney review the settlement agreement, the settlement agreement was executed.  
McCarthy
, 250 Ill. App. 3d at 166-67.  The independent attorney plaintiff had review the settlement agreement was not associated with the defendant law firm.  
McCarthy
, 250 Ill. App. 3d at 166-67.  

After the settlement agreement was executed, plaintiff sued defendants in the circuit court of Cook County asserting attorney malpractice.  
McCarthy
, 250 Ill. App. 3d at 167.  The plaintiff in 
McCarthy
 alleged that the defendant law firm failed to file a timely claim under the Commodities Exchange Act and negligently selected an unqualified expert.  
McCarthy
, 250 Ill. App. 3d at 167.  The defendants filed a motion for summary judgment alleging that plaintiff voluntarily decided to settle the underlying case, particularly in light of independent counsel's review of the settlement agreement, thereby precluding a claim of attorney malpractice.  
McCarthy
, 250 Ill. App. 3d at 167.  The circuit court denied the summary judgment motion because it could not determine as a matter of law that plaintiff's malpractice suit was barred.  
McCarthy
, 250 Ill. App. 3d at 167.

The 
McCarthy 
court affirmed the trial court's denial of summary judgment stating that there were factual disputes that amounted to genuine issues of material fact that plaintiff should be allowed to develop at trial (particularly the level of independent counsel's involvement in the settlement, whether defendants were negligent, and plaintiff's damages.)  The court determined that plaintiffs' malpractice claim was not automatically barred by settlement of the underlying matter.  The 
McCarthy
 court determined that "only a trial on the merits can fully and fairly resolve the issue of whether an attorney is liable for malpractice despite the fact that the underlying case was settled."  
McCarthy
, 250 Ill. App. 3d at 172.  The 
McCarthy
 court pointed out that "[t]o hold otherwise could create ethical problems where an attorney, knowing that he mishandled a case, encourages his client to settle in order to shelter himself from a malpractice claim."  
McCarthy
, 250 Ill. App. 3d at 172.  

We agree with 
McCarthy
 that settlement by successor counsel does not necessarily bar a malpractice action against prior counsel.  
McCarthy
, 250 Ill. App. 3d at 172.  Further, an attorney malpractice action should be allowed where the plaintiff can show that he settled for a lesser amount than he could reasonable expect without the malpractice.  
Brooks
 
v. Brennan
, 255 Ill. App. 3d 260, 270 (1994).  But, such is not the case here.

Plaintiffs cannot establish that they were damaged by defendants.  Defendants presented evidence that plaintiffs were able to pursue a strict liability suit against GM, that plaintiffs settled the strict liability case for $2,265,000, and that plaintiffs referred to the settlement amount as "fair and reasonable."  Plaintiffs failed to present any evidence in their response to the motion to dismiss controverting defendants' showing.  Where a party moving to dismiss a case pursuant to section 2-619 presents affirmative matter containing well-pleaded facts, and the party opposing the motion does not file any supporting documentation countering the facts, the moving party's affirmative matter is accepted as true despite any contrary assertions in the opposing party's pleading.  
Wood
, 229 Ill. App. 3d at 349-50.  Here plaintiffs did not offer any documentation in response to show that they settled for a lesser amount than could be reasonably expected without the malpractice.  Thus, the trial court properly dismissed the action.

The decision of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J., and BURKE, J.
, 
concur.

FOOTNOTES
1:  Margie Webb (Phillip McClain's mother) filed a petition for protective order as part of the process for establishing a special needs trust and a "structured disbursement" plan for Phillip McClain's settlement ($2 million).  In the petition for protective order, Margie Webb, represented by the same successor counsel that negotiated plaintiffs' settlement with General Motors and filed the legal malpractice action against defendants, states that the parties in the strict liability suit with General Motors "reached a settlement agreement for a substantial sum."  Margie Webb's petition was also attached to defendants' motion to dismiss.